IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KENNETH HALL, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 3:10-CV-2174-BK |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Upon the written consent of the parties, this case was transferred to the United States Magistrate Judge for the conduct of all proceedings and the entry of judgment, pursuant to 28 U.S.C. § 636(c). Based on the relevant pleadings, evidence, and applicable law, the decision of the Commissioner is **AFFIRMED**.

**I. BACKGROUND**

**A.   Procedural History**

Kenneth Hall seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("Act"). On March 6, 2007, Plaintiff applied for DIB, claiming that he had been disabled since September 21, 2006, due to hepatitis C, depression, anxiety attacks, headaches, and an inability to concentrate. (Tr. at 94-101, 114).[1]  His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge

---

[1] "Tr." refers to the transcript of the administrative proceedings.

(ALJ). (Tr. at 45-48, 53-55, 66). On May 28, 2009, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 6-7, 33-44). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-4). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g). The cause is now before the Court on the parties' motions for summary judgment. (Docs. 19-20).

B.   **Factual History**

   1.   **Age, Education, and Work Experience**

Plaintiff was born on June 9, 1961, and was 47 years old at the time of the ALJ's decision. (Tr. at 33-45). He has an eleventh grade education, and prior work experience as a warehouse worker, forklift driver, and inspector. (Tr. at 12, 42).

   2.   **Documentary Medical Evidence**

Plaintiff has hepatitis C and in March 2003, Plaintiff's treating physician, Dr. Deepak Patel, M.D. ("Dr. Patel"), referred him to Dr. Edwin Ojo, M.D., for treatment of his hepatitis. (Tr. at 302.). Plaintiff's hepatitis C treatment was unsuccessful. (Tr. at 195). However, the record contains evidence that Plaintiff's hepatitis has since become stable. (Tr. at 201, 330).

Dr. Patel indicated that Plaintiff suffers from fatigue as a result of his hepatitis, and noted on several occasions that Plaintiff was unable to work due to his fatigue. (Tr. at 221, 276, 283, 324, 330, 332). On March 22, 2005, Dr. Patel started Plaintiff on Cerefolin to combat his fatigue. (Tr. at 292).

Doctors have also indicated that Plaintiff suffers from depression and anxiety as a result of his hepatitis. (Tr. at 227, 229, 235, 237, 276). Plaintiff has been prescribed Zoloft, Prozac, and,

most recently, Lexapro for his depression. (Tr. at 163, 281, 283). Dr. Patel also provided Plaintiff with samples of Restoril to help with his insomnia. (Tr. at 291). When Plaintiff presented to the Trinity Clinic complaining of depression in September 2008, staff noted that Plaintiff was alert, anxious and cooperative, in no acute distress and well nourished, and his mental status was normal. (Tr. at 351-53). The Trinity Clinic assessed Plaintiff as having anxiety and depressive disorder. (Tr. at 353). On October 22, 2007, and September 24, 2008, Dr. Patel noted Plaintiff's depression was stable and stated he should continue his current medications. (Tr. at 330, 335).

On March 9, 2009, Dr. Patel completed a RFC[2] questionnaire wherein he listed Plaintiff has having depression and fatigue. (Tr. at 323-28). Dr. Patel added that Plaintiff's fatigue is severe enough to interfere with attention and concentration needed to perform even simple tasks and Plaintiff is incapable of even low stress jobs. (Tr. at 324). Dr. Patel opined that Plaintiff could sit for two hours, stand for thirty minutes, stand/walk for less than two hours, would need more than ten breaks a day, and would miss more than four days of work a month. (Tr. at 324-27). However, Dr. Patel concluded Plaintiff's prognosis was fair, that the "degree of fatigue does not correlate with the severity of hepatitis C or with the degree of elevation of laboratory tests," that Plaintiff did not need a job that permitted shifting positions, and that he did not know how much weight Plaintiff could carry or what activities Plaintiff could perform. (Tr. at 323-28).

On June 9, 2007, Dr. Robert Adelman examined Plaintiff and diagnosed him with anxiety disorder, major depression, and hepatitis C, and found Plaintiff's global assessment of functioning (GAF) score to be 48. (Tr. at 229-230). Dr. Adelman also opined that Plaintiff might benefit

---

[2] The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

from counseling, and noted Plaintiff's judgment and insight appeared to be good and that Plaintiff did not have difficulty receiving or responding to information. *Id*.

On July 16, 2007, Dr. Henry Hanna completed a psychiatric review of Plaintiff. (Tr. at 232). Dr. Hanna noted Plaintiff suffered from major depression and anxiety. (Tr. at 235, 237). Dr. Hanna found: 1) Plaintiff's daily living restrictions to be mild; 2) his difficulties in maintaining social functioning to be mild; 3) his difficulties in maintaining concentration, persistence, or pace to be moderate; and 4) that he had no episodes of decomposition. (Tr. at 242). Dr. Hanna noted that Plaintiff had an "amiable and agreeable manner," there was no evidence of disorganized thinking, and Plaintiff's judgment and insight were good. (Tr. at 244). In addition, Dr. Hanna stated that the previous doctor's opinion on Plaintiff's fatigue failed to comport with the observational evidence and Plaintiff's self report. (Tr. at 244).

### 3. Hearing Testimony

The ALJ held a hearing on May 6, 2009, where Plaintiff and a vocational expert testified. (Tr. at 9). Plaintiff was represented by counsel, and testified that he was divorced and lived alone. (Tr. at 13). Plaintiff's most recent job was as a quality control inspector at a manufacturing plant, and his duties consisted of walking around for eight hours a day and visually inspecting the trailers to ensure they were properly built. (Tr. at 13-15). Plaintiff quit the quality control position because of fatigue that caused him to take too many breaks. (Tr. at 15-16). Prior to holding that position, Plaintiff worked in shipping and receiving for the same company as a forklift operator, but changed jobs because he was "getting too tired while trying to do the physical part." (Tr. at 15). Plaintiff testified that the fatigue was the only thing preventing him from working. (Tr. at 16).

Plaintiff testified that he also suffers from hepatitis C. (Tr. at 16). He received treatment for hepatitis C in the past but it did not work. (Tr. at 17). Plaintiff said he believes his hepatitis C is stable but still causes his fatigue. (Tr at 17). Plaintiff's medications for bronchitis and anxiety also made him "drowsy." (Tr at 17-18).

Plaintiff has been prescribed Lexapro for his anxiety and depression. (Tr. at 19). When asked about his anxiety, Plaintiff stated he did not know what the issues were and didn't "know how to explain it." (Tr. at 19). For the three years prior to the hearing, Plaintiff had also been treated for depression. (Tr. at 19-20). Plaintiff averred that his depression symptoms include not wanting to be a social person. (Tr. at 20). Plaintiff does not have a fear about being around others; it just makes him uncomfortable. (Tr. at 20). Although Plaintiff takes his medication, he claims it does not help him. (Tr. at 21).

A normal day for Plaintiff involves cleaning up his house, including vacuuming, but he must take breaks. (Tr. at 21). In addition, Plaintiff drives, dresses and bathes himself, cuts his own hair, changes his sheets, washes the dishes, cooks, attends church a couple of Sundays a month, shops, does his laundry, watches television, and sees his family and friends when "they come by." (Tr. at 1, 21-23). Plaintiff could sit for an hour "if [he] had to," can stand or walk for 30 minutes, and can lift 20 pounds. (Tr. at 24).

Molly Meloy, a vocational expert, next testified that Plaintiff's most recent job as a quality control inspector is in the light-exertion category and at the semi-skilled L4 specific vocational preparation level. (Tr. at 26). When presented with the ALJ's RFC finding as detailed below, Meloy opined that Plaintiff could perform unskilled work. (Tr. at 27). According to Meloy, appropriate jobs that exist in significant numbers in the national economy include a laundromat

5

worker, tollbooth collector, and a gate attendant. (Tr. at 27-28). When asked if a hypothetical claimant would be able to perform these jobs if he could only sit two hours and stand and walk for less than two hours, Ms. Meloy indicated that would not be possible at a full-time level. (Tr. at 28). Further, if the claimant had to take ten unscheduled breaks during the day, he also would not be able to maintain employment. (Tr. at 28-29).

**C.     ALJ's Findings**

The ALJ found Plaintiff had not engaged in any substantial gainful activity since September 21, 2006, the alleged onset date, and had the severe impairments of hepatitis C, depression disorder, and anxiety disorder. (Tr. at 38). The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (Tr. at 38-39). The ALJ further determined that Plaintiff had the RFC to perform a light range of work as defined in 20 C.F.R. § 404.1567(b), with additional limitations. (Tr. 40). Specifically, the ALJ found Plaintiff could sit six out of eight hours, stand or walk four to six out of eight hours, and lift and carry 20 pounds occasionally and ten pounds frequently. *Id*. The ALJ found Plaintiff could occasionally crawl, squat, stoop, bend, or climb, but could not work at heights or climb ladders. *Id*. Further, the ALJ determined Plaintiff could concentrate for extended periods of time, respond appropriately to routine changes in a work environment, and perform simple, repetitive tasks. *Id*. The ALJ concluded that, although Plaintiff was not able to perform his past relevant work, he was not disabled as defined by the Act because he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 42).

## II. ANALYSIS

A.   <u>**Legal Standards**</u>

    1.   **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

    2.   **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

    1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

    2.    An individual who does not have a "severe impairment" will not be found to be disabled.

    3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

    4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

    5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.**    <u>Issue for Review</u>

*(1) Did the ALJ err in rejecting Dr. Patel's opinion regarding Plaintiff's fatigue?*

Plaintiff avers the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr.

8

Patel, and should have engaged in the six-factor analysis required by 20 C.F.R. § 404.1527(d). (Doc. 19-1 at 10-14). For the reasons that follow, the Court is not persuaded by this argument.

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight. *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). A treating physician's opinion on the nature and severity of a patient's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)). Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. *Martinez*, 64 F.3d at 76 (citation omitted). The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id*. (citation omitted). A treating physician's opinion also may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).

In any event, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453 (emphasis in original). Those criteria include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion

with the record as a whole; and (6) the specialization of the treating physician. *Id*. at 455; *see also* 20 C.F.R. § 416.927(d)(2) (governing SSI). When an ALJ fails to consider all evidence from a treating source and fails to present good cause for rejecting it, the matter should be remanded for further consideration. *Newton*, 209 F.3d at 457.

In this case, Dr. Patel's statements that Plaintiff was disabled and not able to work went beyond medical opinions, and instead were legal conclusions on issues reserved to the Commissioner. (Tr. 221, 276, 324, 330); *Martinez*, 64 F.3d at 76. Moreover, Dr. Patel's fatigue assessment seems to have been based entirely on Plaintiff's subjective complaints, and was not supported by medically acceptable clinical and laboratory techniques. (Tr. at 33); *See Greenspan*, 38 F.3d at 237 (noting good cause exists to disregard a treating physician's medical opinion if it is brief and conclusory, not supported by medically acceptable clinical laboratory techniques, or otherwise unsupported by the evidence). Furthermore, Dr. Patel's assessment is contradicted by his indication that Plaintiff's prognosis was fair and that the degree of fatigue does not correlate with the severity of hepatitis C or with the degree of elevation of laboratory tests. (Tr. at 323). Dr. Patel left the section blank that asked what studies correlate the fatigue. *Id*.

The ALJ also pointed to other medical assessments and testimony which contradicted Dr. Patel's findings. (Tr. at 42). Dr. Hanna stated that the opinion regarding Plaintiff's fatigue fails to comport with the observational evidence and Plaintiff's self report. (Tr. at 244). Similarly, the ALJ noted Dr. Patel's fatigue assessment is inconsistent with observational evidence at the consultive examination and Plaintiff's testimony. (Tr. at 42).

A review of the record reveals Dr. Patel's opinion regarding fatigue is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, and otherwise

unsupported by the evidence and, therefore, the ALJ had an acceptable basis for rejecting it. *See Newton*, 209 F.3d at 455-56. Thus, the Court finds Plaintiff's argument that the ALJ erroneously rejected Dr. Patel's opinion to be without merit.

*(2) Does substantial evidence support the ALJ's RFC determination?*

Plaintiff next argues that the ALJ's RFC assessment was not supported by substantial evidence. (Doc. 19-1 at 15-19). Specifically, Plaintiff avers the ALJ's RFC does not take into account Plaintiff's physical and mental limitations, or his limitations in social functioning. *Id*.

The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole and to resolve conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1017, 1023 (5th Cir. 1990). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson*, 864 F.2d at 343-44. Here, substantial evidence exists in the record to support the ALJ's finding, and the ALJ properly considered the record as a whole in determining Plaintiff's RFC.

The medical record as a whole does not support the limitations claimed by Plaintiff. In regard to Plaintiff's fatigue, the record indicates Plaintiff cleans his house, including vacuuming (albeit with some breaks), drives, dresses and bathes himself, cuts his own hair, changes his sheets, washes the dishes, cooks, attends church a couple of Sundays a month, shops, does his laundry, watches television, and sees his family and friends when "they come by." (Tr. at 1, 21-23). In addition, Plaintiff told Dr. Adelman that he was able to "take care of business" (care for himself). (Tr. at 227). Moreover, as previously stated, Dr. Hanna concluded that the doctor's opinion on Plaintiff's fatigue fails to comport with the observational evidence and Plaintiff's own

11

self report. (Tr. at 244).

Plaintiff also avers the ALJ failed to include his mental limitations, specifically his inability to concentrate. (Doc. 19-1 at 17). However, the ALJ accounted for Plaintiff's mental impairments in his RFC by limiting Plaintiff to performing simple, repetitive tasks. (Tr. at 40). In addition, the ALJ's RFC assessment that Plaintiff can concentrate for extended periods of time and respond appropriately to routine changes in a work environment is supported by the record. Dr. Hanna noted that Plaintiff's difficulties in maintaining concentration, persistence, or pace to be moderate (Tr. at 242), and that Plaintiff's ability to maintain attention and concentration for extended periods was not significantly limited. (Tr. at 246). Dr. Adelman opined Plaintiff's intellectual level was in the average range of intelligence, Plaintiff had no problem receiving or responding to information, and Plaintiff did not have disorganized thinking. (Tr. at 327-330). Furthermore, Plaintiff stated that fatigue was the only thing preventing him from working. (Tr. at 16).

Finally, Plaintiff's contention that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider Plaintiff's limitations in social functioning is also without merit. (Doc. 19-1 at 17-19). Dr. Hanna opined that Plaintiff's had only mild difficulties in social functioning. (Tr. at 242). Dr. Hanna also opined that Plaintiff's ability to interact with the public, to ask simple questions or request assistance, to accept instructions and criticism, to get along with coworkers, and to maintain socially appropriate behavior was not significantly limited. (Tr. at 247). Again, Plaintiff stated that fatigue was the only thing preventing him from working. (Tr. at 16). Therefore, the ALJ's RFC determination is supported by substantial evidence, and the ALJ properly considered all Plaintiff's impairments when determining her RFC.

## III. CONCLUSION

Plaintiff's *Motion for Summary Judgment* (Doc. # 19) is **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. # 20) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** on August 9, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE